IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HIGH TECH PET PRODUCTS, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**SHENZHEN JIANFENG ELECTRONIC PET PRODUCT CO., LTD, VELLY WEI, DOES 1-20,**<br><br>Defendants. | 1:13-cv-00242 AWI MJS<br><br>**FINDINGS AND RECOMMENDATION REGARDING APPLICATION FOR DEFAULT JUDGMENT**<br><br>**OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS**<br><br>**(Doc. 19)** |

This is an action for unfair competition, false designation of origin, false advertising, trademark infringement, trade dress infringement, state unfair and deceptive business practices, and state false advertising. Plaintiff High Tech Pet Products, Inc. ("HTPP") moves the court pursuant to Federal Rule of Civil Procedure 55(b)(2) for entry of a default judgment against Defendants Shenzhen Jianfeng Electronic Pet Product Co., Ltd. ("SJEPP") and against Velly Wei, SJEPP's managing agent and sales manager.[1] Plaintiff asks the Court for an award of fees, costs of suit, and injunctive relief

---

[1] Plaintiff already dismissed a third named defendant, Hongming Tang from the matter. (See ECF No. 14.) Additionally, though he brought this action against twenty Doe Defendants, he moves for default judgment only as to named defendants. Accordingly, the Court recommends that the Doe Defendants be dismissed from the action. There is no provision in the Federal Rules of Civil Procedure permitting the use of fictitious defendants in a complaint otherwise lacking in jurisdiction. See Fifty Assocs. v. Prudential Ins. Co. of Am., 446 F.2d 1187, 1191 (9th Cir. 1970).

1  against Defendants.

2  Plaintiff has not established that this Court has personal jurisdiction over

3  Defendants.  Accordingly, the Court recommends that the matter be transferred to the

4  United States District Court for the Middle District of Florida.

5  **I.**  **BACKGROUND**

6  **A.**  **Statement of Facts and Procedural History**

7  Plaintiff HTTP is a California corporation with its principal place of business in

8  Ventura, California.  It manufactures and distributes electronic pet products throughout

9  the United States. (Compl. ¶ 1.) Plaintiff owns a federally registered trademark for "Bark

10  Terminator" used in the manufacture and distribution of dog training collars. (Compl. ¶

11  22, Ex. 3.) Plaintiff also asserts that it has common law trademark rights to the terms

12  "humain contain," "proportional stimulus," "pulsed proportional stimulus," and "speed

13  detect" with regard to electronic pet fencing systems. (Compl. ¶¶ 9-11.) In its complaint,

14  Plaintiff alleges that Defendant SJEPP is a corporation organized and existing under the

15  laws of the People's Republic of China with its principal place of business in China.

16  (Compl. ¶ 2.) Plaintiff also alleges that Defendant Wei is an individual residing in the

17  People's Republic of China. (Id.)

18  Plaintiff alleges that since approximately December 2011, Defendants, with at

19  least constructive notice of Plaintiff's common law trademarks, have sold electronic pet

20  fencing systems throughout the United States bearing the marks "proportional stimulus,"

21  "pulsed proportional stimulus," and "speed detect". (Compl. ¶ 14.)   Plaintiff further

22  alleges that since approximately December 2011, Defendants, with at least constructive

23  notice of Plaintiff's federal trademark, have sold bark control systems in the United

24  States bearing the mark "bark terminator". (Compl. ¶ 26.) Defendants use the mark "bark

25  terminator" to identify 18 different bark control systems advertised on and purportedly

26  sold though Defendants' website. (Compl. ¶ 27; Ex. 4.) Finally, Plaintiff asserts that

27  Defendants utilize a trade dress design that infringes on the design of Plaintiff's

28  packaging for its pet containment and remote training systems. (Compl. ¶ 32.) Plaintiff

2

1   claims that as a result of the use of the marks described above, Defendants' infringing

2   activities are likely to result in confusion of customers who will believe that Defendants'

3   goods are goods originating from and associated with Plaintiff.

4       With regard to the specific activities engaged in by Defendants, Plaintiff alleges

5   that Defendant Wei, on behalf of SJEPP, attended the Global Pet Expo in Orlando,

6   Florida, in February 2013. He there operated a sales exhibit booth advertising SJEPP's

7   products. At the trade show, Nicholas J. Bonge, President and CEO of HTTP, spoke to

8   Defendant Wei and purchased a bark control collar labelled as a "bark terminator" from

9   SJEPP. (Bonge Decl. ¶ 3.) Plaintiff also indicates that Defendants operate an interactive

10  website used to sell the allegedly infringing products. On the website, Defendants claim

11  that North America constitutes 60% of its sales market. (Id., ¶ 4.) Bonge believes that

12  HTTP has lost and will continue to lose business in North America and California due to

13  Defendants' actions. (Id. ¶ 11.) Specifically, Bonge notes that the sales of HTTP's

14  "humane contain" system sold through the Sam's Club retailer have dropped significantly

15  since SJEPPs advertised at the Pet Expo. (Id.)

16      On January 16, 2014, Plaintiff's counsel noted in a supplemental declaration that

17  it appears that Defendants are planning to have an advertising booth at the 2014 Global

18  Pet Expo to be held again in Orlando, Florida in March of this year. (Supp. Holland Decl.,

19  ECF No. 26.)

20      Plaintiff filed the current action in this Court on February 14, 2013, asserting eight

21  claims against Defendants including: 1) false designation of origin under 15 U.S.C. §

22  1125(a); 2) false advertising under 15 U.S.C. § 1125(a); 3) federal trademark

23  infringement of Plaintiff's federally registered "bark terminator" trademark and Plaintiff's

24  common law trademarks including "Proportional Stimulus," "Pulsed Proportional

25  Stimulus," and "Speed Detect;" 4) trade dress infringement of Plaintiff's electric pet

26  fencing product packaging; and 5) four counts of unfair and deceptive business practices

27  under California law. (Compl., ECF No. 2.)

28      Plaintiff served the complaint on Defendants Shenzhen Jianfeng Electronic Pet

3

1  Product Co., Ltd. and  Velly Wei, and dismissed the remaining named defendant,

2  Hongming Tang. Defendants did not file responsive pleadings or otherwise appear.

3  Plaintiff requested an entry of default against Defendants on July 23, 2013. (ECF Nos.

4  10-11.) The Clerk of Court entered default on September 16, 2013. (ECF No. 16.)

5           **B.**   **Motion for Default Judgment**

6  Plaintiff filed the instant motion for default judgment on October 23, 2013, and

7  provided the Court supporting papers and declarations December 3, 2013. Plaintiff

8  seeks an award of attorney fees, costs of the suit, and a permanent injunction enjoining

9  Defendants from infringing on Plaintiff's trademarks and trade dress relating to electric

10 pet fencing and bark control products and enjoining defendants from engaging in false or

11 deceptive advertising regarding the origin of their products or relationship to Plaintiff.

12 The matter was taken under submission by the court and presently stands ready

13 for adjudication.

14 **II.**   **LEGAL STANDARDS**

15 Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment

16 in a case following a defendant's default. Shanghai Automation Instrument Co. v. Kuei,

17 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the

18 court's discretion.[2] Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D.

19 Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)) ("A

20 defendant's default does not automatically entitle the plaintiff to a court-ordered

21 judgment."); Shanghai Automation Instrument Co., 194 F. Supp. 2d at 999.

22 Before assessing the merits of a default judgment, a court must confirm that it has

23 subject matter jurisdiction over the case and personal jurisdiction over the parties, as

24 well as ensure the adequacy of service on the defendant. See In re Tuli, 172 F.3d 707,

25 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following

26 
27        [2] A court, however, may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. Fed. R. Civ. P. 55(b)(2). Plaintiff asserts, but did not submit evidence in support of showing that Defendant Wei not a minor, incompetent person, or a person in

28 military service.

4

factors ("the Eitel factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." Pepsico, Inc., 238 F. Supp. 2d at 1175 (citing Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992). The fourth factor focuses on the amount at issue in the action, as courts should be hesitant to enter default judgments in matters involving large sums of money. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." Bd. of Trs. v. Core Concrete Constr., Inc., No. C 11-2532 LB, 2012 U.S. Dist. LEXIS 14139, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing Eitel, 782 F.2d at 1472). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." Id. (citations omitted).

## III.   ANALYSIS

### A.   Service of Process

This court does not have jurisdiction over Defendants unless Defendants have been served properly under Federal Rule of Civil Procedure 4. Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 688 (9th Cir. 1988). Plaintiff served Defendants personally with the summons and Complaint in the state of Florida on February 20, 2013. Federal Rule of Civil Procedure 4(e) governs service on an individual in a federal judicial district of the United States, and allows for service as follows:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:
    (A) delivering a copy of the summons and of the complaint to the individual personally;
    (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
    (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Plaintiff personally served individual Defendant Wei with a copy of the summons and complaint. Plaintiff also served Wei as an agent of SJEPP. Accordingly, service of process appears proper under Rule 4(e)(2).

### B.    Subject Matter and Personal Jurisdiction

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides that district courts have original jurisdiction of all actions arising under the laws of the United States and 28 U.S.C. § 1338, which provides that district courts have original jurisdiction of all actions arising "under any Act of Congress relating to . . . trademarks."

The exercise of personal jurisdiction over a nonresident defendant must be authorized under the state's long-arm statute and must satisfy the due process clause of the United States Constitution. See Pac. Atl. Trading Co. v. M/V Main Express, 758 F.2d 1325, 1327 (9th Cir. 1985). "California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008); see also Cal. Civ. Pro. Code § 410.10. "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1073 (9th Cir. 2011) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1954)). Under due process analysis, a defendant may be subject to either general or specific personal jurisdiction. See Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Here, Plaintiff does not allege that

Defendants are subject to general jurisdiction in this judicial district. Accordingly the Court shall determine if it may exercise specific jurisdiction over the Defendants.[3]

The Ninth Circuit applies a three-part test in determining whether specific jurisdiction exists:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Natural Gas Antitrust Litig.), 715 F.3d 716, 742 (9th Cir. 2013); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (internal citations and quotation marks omitted).

A plaintiff bears the burden of establishing that the court has personal jurisdiction over a defendant. Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986) (citation omitted). "[T]he plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001) (quoting Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995) (internal quotation marks omitted). In considering Plaintiff's motion for default judgment, the court may "draw reasonable inferences from the complaint in favor of the plaintiff where personal jurisdiction is at stake, and will assume credibility." Fiore v. Walden, 688 F.3d 558, 575 (9th Cir. 2012) (overruled on other grounds in Walden v. Fiore, 571 U.S. __, 2014 U.S. LEXIS 1635 (U.S. Feb. 25, 2014)).

---

[3] Plaintiff, in its complaint, asserts that there is jurisdiction in this case under the Federal long-arm statute. See Fed. R. Civ. P. 4(k)(2); Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1159 (9th Cir. 2006). However, Plaintiff does not argue for such jurisdiction in its motion for default judgment. Regardless, such jurisdiction is likely lacking as it requires a showing that Defendants are not "subject to the jurisdiction of the courts of general jurisdiction of any state." Id. Here, it appears Defendants may be subject to jurisdiction in Florida.

In order to establish the first prong of the specific jurisdiction test, Plaintiff must show that Defendant "either purposefully availed [him or herself] of the privilege of conducting activities in California, or purposefully directed [his or her] activities toward California. Schwarzenegger, 374 F.3d at 802. Purposeful availment is most often used in cases related to contract disputes, and purposeful direction is used in suits, such as this trademark action, that sound in tort. Id.; see also Panavision, 141 F.3d at 1321 (stating a trademark infringement action is "akin to a tort case").

1.     Purposeful Direction

Plaintiff asserts that personal jurisdiction is proper based on Defendants' actions of soliciting business at the trade show in Florida and advertising and selling through Defendants' website.

The Ninth Circuit uses the three-part "effects test" from Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984), to evaluate purposeful direction. Under the effects test, a defendant purposefully directs activity at a forum state when he or she "(1) commit[s] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 805 (citation omitted).

Plaintiff, in attempting to establish specific jurisdiction, relies on Ninth Circuit cases for the proposition that jurisdiction is established in California based on Plaintiff's harm, regardless of Defendants' lack of presence in the present forum. See, e.g., Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. Cal. 1998) (personal jurisdiction satisfied, based solely on harm suffered to plaintiff from out-of-state Defendant registering plaintiff's trademarks as domain names); Dole Food Co. v. Watts, 303 F.3d 1104, 1114 (9th Cir. Cal. 2002) (Specific jurisdiction proper in California against European defendants from a warehouse lease in Europe because of Plaintiff's harm in California.); Wash. Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 678 (9th Cir. 2012) (specific jurisdiction found in Washington over Arkansas defendant infringing plaintiff's copyright in Arkansas because of harm to Plaintiff in Washington state.).

8

1    In Fiore v. Walden, the Ninth Circuit found personal jurisdiction in Nevada against

2    a Drug Enforcement Administrative agent who filed an allegedly false report in Georgia

3    based on the fact that defendant knew it may cause harm to plaintiffs in Nevada. 688

4    F.3d 558, 577 (9th Cir. 2012). In Fiore, the Ninth Circuit explained, "In general, where

5    there was "individual targeting" of forum residents — actions taken outside the forum

6    state for the purpose of affecting a particular forum resident or a person with strong

7    forum connections — we have held the express aiming requirement satisfied." Id. at 577

8    (citing Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1129-31 (9th Cir.

9    2010); Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1157 (9th Cir. 2006); Dole Food Co.,

10   Inc., 303 F.3d at 1111; Bancroft & Masters v. Augusta Nat', 223 F.3d 1082, 1087 (9th

11   Cir. Cal. 2000)).

12   However, on February 25, 2014, the Supreme Court overturned Fiore. Walden v.

13   Fiore, 571 U.S. __, 2014 U.S. LEXIS 1635 (U.S. Feb. 25, 2014)). The Supreme Court

14   held that because the defendant had no contacts with the forum state, and that "a

15   plaintiff's contacts with the forum State cannot be 'decisive in determining whether the

16   defendant's due process rights are violated,'" personal jurisdiction was inappropriate.

17   2014 U.S. LEXIS 1635, *4. The Supreme Court held that personal jurisdiction is focused

18   on the "relationship among the defendant, the forum, and the litigation" and "the

19   defendant's suit-related conduct must create a substantial connection with the forum

20   State." Id. at *12.

21   The Supreme Court focused on two aspects of the analysis: (1) "the relationship

22   must arise out of contacts that the 'defendant himself' creates with the forum State," and

23   (2) that the "'minimum contacts analysis looks to the defendant's contacts with the forum

24   State itself, not the defendant's contacts with persons who reside there." Walden, 2014

25   U.S. LEXIS 1635, *12-14 "[T]he plaintiff cannot be the only link between the defendant

26   and the forum. Rather, it is the defendant's conduct that must form the necessary

27   connection with the forum State that is the basis for its jurisdiction over him." Id. at *15.

28   The Supreme Court specifically described that these principles apply to intentional

9

1  tort actions. Id. at *16. ("A forum State's exercise of jurisdiction over an out-of-state

2  intentional tortfeasor must be based on intentional conduct by the defendant that creates

3  the necessary contacts with the forum."). Based on these principles, the Supreme Court

4  found that minimum contacts had not been established with Walden in Nevada. All of

5  Walden's actions at issue took place in Georgia. In basing jurisdiction on the harm to

6  plaintiffs in Nevada, the Supreme Court found that the Ninth  Circuit's "approach to the

7  'minimum contacts' analysis impermissibly allow[ed] a plaintiff's contacts with the

8  defendant and forum to drive the jurisdictional analysis." Id. at 21. To the extent that

9  Plaintiff relied upon Fiore v. Walden and other related Ninth Circuit cases to attempt to

10  establish subject matter jurisdiction, its arguments are unavailing.

11        In properly viewing the focus of the minimum contacts analysis on the fact that it

12  is the defendant, not the plaintiff or third parties, who must create contacts with the forum

13  State, the Court turns to the evidence presented by Plaintiff.  Plaintiff asserts that

14  Defendants had a booth and advertised and sold infringing products for sale at the

15  Global pet Expo in Orlando, Florida in February, 2013.  (See Bonge Decl., ECF No. 25,

16  Supp. Holland Decl., ECF No. 26.) Specifically, Nicholas Bonge, President of Plaintiff,

17  purchased a bark control collar affixed with the "bark terminator" trademark from

18  Defendants while at the trade show. (Bonge Decl. ¶ 3.)

19        Plaintiffs point to no action by Defendants at the trade show in Florida that created

20  a substantial connection with California. Plaintiffs have not provided any evidence that

21  Defendant's advertisements or actions focused on California customers. Frankly, beyond

22  Plaintiff's interaction with Defendants, there is no evidence that Defendants interacted,

23  advertised, or sold products to any other California residents or business entities.

24  Defendants' actions at the tradeshow in Florida are not sufficient to establish minimum

25  contacts with California.

26            2.    Internet Presence

27        Plaintiff provides evidence that Defendants maintain an interactive website which

28  advertises pet products with allegedly infringing marks. In the internet context, the Ninth

1    Circuit uses a sliding scale analysis "that looks to how interactive an Internet website is

2    for purposes of determining its jurisdictional effect." Boschetto, 539 F.3d at 1018.[4]

3    "Personal jurisdiction is appropriate where an entity is conducting business over the

4    internet and has offered for sale and sold its products to forum residents." Gucci Am.,

5    Inc. v. Wang Huoqing, C-09-05969 CRB, 2011 U.S. Dist. LEXIS 783, 2011 WL 31191, at

6    *6 (N.D. Cal. Jan. 3, 2011) (citing Stomp, Inc. v. NeatO, LLC, 61 F. Supp. 2d 1074,

7    1077-78 (C.D. Cal. 1999)).

8        Plaintiff alleges that Defendants' intentional acts include advertising and offering

9    for sale on its website pet products using Plaintiff's trademarks and trade dress. (Bonge

10   Decl. ¶¶ 2, 4, 8, 10.) Plaintiff does not assert that Defendants have directed advertising

11   specifically to California consumers. Nor does Plaintiff assert that any sales have been

12   made in California. The most specific allegation made by Plaintiff is that Defendant

13   SJEPP states on its website that 60% of its sales are made to North America. (Id. at ¶

14   4.) Such a statement does not indicate whether such sales were made domestically (e.g.

15   to the United States, rather than Canada or Mexico) let alone sales to California.

16   Additionally, the sales made by SJEPP to North America may well include sales of other

17   non-infringing products.

18       While the presence and use of an interactive website can alone establish

19   minimum contacts, Plaintiff has not provided any evidence that Defendants' online

20   presence was substantially directed towards California. In other cases where specific

21   jurisdiction was established, defendants directed significant effort to advertising to and

22   targeting California companies. See e.g., CollegeSource, Inc. v. AcademyOne, Inc., 653

23   F.3d 1066, 1071-1072 (9th Cir. 2011) (Defendant utilized search word advertising

24   through Google AdWords, solicited California colleges and state educational agencies

25   _____

26       [4] In Walden v. Fiore, the Supreme Court mentions, but does not address, the impact of its
     reasoning on minimum contacts based on internet presence. 2014 U.S. LEXIS 1635 at *23-24n.9 ("We

27   leave questions about virtual contacts for another day.") Regardless, the Court reaffirmed that the
     "'minimum contact' inquiry principally protects the liberty of the nonresident defendant, not the interests of

28   the plaintiff." Id. (citing World-Wide Volkswagen Corp. v. Woodson, 444 U. S., 286, 291-292 (1980)).

1    by phone and email and 19% of the 26,000 visits to its website were from unique

2    California IP addresses.); <u>Chanel Inc. v. Yang</u>, 2013 U.S. Dist. LEXIS 151104, 23-24

3    (N.D. Cal. Aug. 13, 2013) (Plaintiffs presented evidence of  over 27,000 unique hits from

4    California.); <u>but see</u>, <u>Nubonau, Inc. v. NB Labs, Ltd.</u>, 2012 U.S. Dist. LEXIS 32963 (S.D.

5    Cal. Mar. 9, 2012) (personal jurisdiction not established where defendant sold $40,000

6    of non-infringing product from its website to California and the only two California sales

7    of infringing products were to Plaintiff's investigators.) Plaintiff has not shown that

8    Defendants' internet presence has established minimum contacts in California.

9    Accordingly, personal jurisdiction does not exist in California.

10    **IV.**    <u>**TRANSFER TO THE MIDDLE DISTRICT OF FLORIDA**</u>

11          Where the court determines that it lacks jurisdiction over a matter, it must

12    determine whether the case should be transferred to another district or dismissed

13    pursuant to 28 U.S.C. § 1631. <u>See</u> <u>Miller v. Hambrick</u>, 905 F.2d 259, 262 (9th Cir. 1990);

14    <u>see also</u> <u>Gray & Co. v. Firstenberg Mach. Co.</u>, 913 F.2d 758, 761-62 (9th Cir. 1990)

15    (holding that district court lacked personal jurisdiction and remanding for determination of

16    whether transfer is in the interest of justice pursuant to 28 U.S.C. § 1631).

17          Section 1631 provides that, if the court determines it is lacking jurisdiction in a civil

18    case, "the court shall, if it is in the interest of justice, transfer such action . . . to any other

19    such court in which the action . . . could have been brought at the time it was filed." This

20    provision "serves to 'aid litigants who were confused about the proper forum for review.'"

21    <u>Miller</u>, 905 F.2d at 262 (quoting <u>In re McCauley</u>, 814 F.2d 1350, 1352 (9th Cir. 1987)).

22    The court finds transfer appropriate here.

23          Personal jurisdiction, if it exists in any judicial district, is likely to exist in the

24    Middle District of Florida where Defendants attended, and plan again to attend, the

25    Global Pet Expo.

26          The interest of justice is also served in transferring this case rather than

27    dismissing it. Dismissing this action and requiring plaintiff to file a new action in Florida

28    would waste both the parties' and the court's resources. "Normally transfer will be in the

interest of justice because . . . dismissal of an action that could have been brought elsewhere is 'time-consuming and justice-defeating.'" <u>Miller</u>, 905 F.2d at 262 (quoting <u>Goldlawr, Inc. v. Heiman</u>, 369 U.S. 463, 467, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962)). Transfer here would lead to a more just, speedy, and inexpensive resolution for all parties.

## V.     FINDINGS AND RECOMMENDATION

Accordingly, the Court RECOMMENDS that due to the lack of personal jurisdiction in this district, that the case be transferred to the United States District Court for the Middle District of Florida.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen (14) days after the date of service of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within fourteen (14) days after service of the Objections. The Finding and Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __March 6, 2014__          /s/ *Michael J. Seng*
                                    UNITED STATES MAGISTRATE JUDGE